JACK DOUGLAS AND DOROTHY SULLIVAN (FORMERLY DOROTHY DOUG-
LAS), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT.

DOROTHY SULLIVAN (FORMERLY DOROTHY DOUGLAS), PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 39977, 39979.    Filed November 21, 1956.

*Robert J. Hobby*, *Esq.*, for petitioner Dorothy Sullivan (formerly Dorothy Douglas).

*Owen S. Kern*, *Esq.*, for the respondent.

308

310

OPINION.

BLACK, *Judge:*

*Issues in Docket No. 39977.*

In this docket number the petitioners are Jack Douglas and Dorothy Sullivan (formerly Dorothy Douglas). Jack did not appear at the hearing, either in person or by counsel. Respondent's counsel filed at the hearing a stipulation of settlement, so far as Jack was concerned, signed by Jack's counsel and respondent's counsel. That stipulation of settlement is incorporated in our Findings of Fact and will be given effect in a decision under Rule 50 as to Jack's tax liability for the 3 years, 1946, 1947, and 1948. Jack is not before us as a petitioner for the year 1949.

Dorothy has not entered into any agreement of settlement but, on the contrary, appeared at the hearing in person and by her own separate counsel contested the deficiencies and testified at length.

In her original petition in Docket No. 39977, Dorothy raised numerous assignments of error to the adjustments which had been made by the Commissioner to the income which had been reported on the purported joint returns for the years 1946, 1947, and 1948. Dorothy did not press these assignments of error at the hearing.

At the hearing, Dorothy filed an amendment to petition in which she alleged errors as follows:

(h) The Respondent erred in that the notice of deficiency for the calendar year 1946 was mailed January 22, 1952 and is barred by the statute of limitations.

(i) The Respondent erred in that the notice of deficiency for the calendar year 1947 was mailed January 22, 1952 and is barred by the statute of limitations.

(j) The Commissioner erred in asserting any liability against petitioner, Dorothy Sullivan, formerly Dorothy Douglas, in that the income tax returns which are the basis of the statutory notice of deficiency, are purportedly joint returns, but such returns are not signed by Dorothy Sullivan, formerly Dorothy

Douglas and do not impose any liability upon her. The returns in question are not available to petitioner and this assignment of error is based upon knowledge and belief.

We shall first take up and decide whether the returns for 1946, 1947, and 1948, which the Commissioner used as a starting point for his determination of the deficiencies, were in fact joint returns of Jack and Dorothy.

The determination of this type question largely depends upon the facts in each particular case. There are many cases, both of our own Court and other courts, which deal with this general subject. Some of these cases are cited and relied upon by petitioner and some are cited and relied upon by respondent. One of the cases cited and relied upon by petitioner is one of the more recent cases of our Court upon the subject, *Alma Helfrich*, 25 T. C. 404. In that case we held that the purported joint return for the year 1947, which was relied upon by the Commissioner in his determination of the deficiencies and additions to tax for fraud was not a joint return; that the wife did not intend to file a joint return for 1947; and that she was not jointly and severally liable for the deficiencies and additions to tax which the Commissioner had determined. In thus ruling, we said:

There is no doubt that the return on its face purports to be the joint return of Carl and Alma Helfrich. It was filed in their joint names. The question as to whether the wife (or husband) is making a separate return is answered in the negative, and it bears signatures purporting to be those of Carl W. Helfrich and Alma L. Helfrich.

We have found, however, and we hereby hold, that petitioner had no intention of filing a joint return and did not in fact file a joint return with Carl W. Helfrich for the year 1947. The signature "Alma L. Helfrich" on the return is not hers. Furthermore, she did not authorize anyone to sign her name to the return; she did not know the return had been filed; she did not participate in its preparation; and the first time she saw it was in the collector's office in East St. Louis in 1952. See *Arlington F. Brown*, 24 T. C. 256; *Myrtle O. Calhoun*, 23 T. C. 4. Moreover, we are unable to find that the execution with Carl of a power of attorney and consent relating to 1947 taxes is an admission that the return was intended to be a joint return. Such execution would appear to be a proper course of action for any taxpayer whose tax liability for a certain year is questioned by the Commissioner whether or not any return had been filed.

As to the alleged joint returns for the years 1946 and 1948 involved in this proceeding the facts in the instant case are similar to those involved in the *Helfrich* case, *supra*. Here the returns for 1946 and 1948 both purported to be joint returns. The return for 1946 purports to be signed by both Jack and Dorothy. The 1948 return is signed only by Jack. Dorothy testified that her name signed to the 1946 return is a forgery, that she does not know who signed it but that she does know that she did not authorize anyone to sign the return for her. She also testified that she knew nothing about the filing of either the 1946 or 1948 return. She did not know what was in the returns and

had no intent to file joint returns for either of those years. These facts are strikingly similar to the facts in the *Helfrich* case, *supra*. On the authority of that case and the other cases cited therein, we hold that the returns for 1946 and 1948 were not joint returns and that Dorothy is not liable for any deficiencies in income tax or additions thereto for fraud determined by the Commissioner jointly against Jack and Dorothy, husband and wife, for the years 1946 and 1948. This situation as to Dorothy's liability is different from that which prevails as to the taxable year 1949, discussed hereafter. As to 1949, the Commissioner determined a deficiency separately against Dorothy and not jointly as he did in his deficiency notice covering the years 1946, 1947, and 1948.

We think the facts in the instant case are distinguishable from those present in *Muriel Heim*, 27 T. C. 270, in which we held "The petitioner acquiesced in and gave her tacit consent to the filing of a joint return on which her name was signed by another." In the *Muriel Heim* case we pointed out, among other things, as follows:

> The petitioner and her husband, during all of 1951 and at all other times material hereto, were living together as husband and wife. The tax due on a joint return of the petitioner and her husband for 1951 is substantially less than the total tax due if they had filed separate returns for that year. Her husband knew this, fully intended to file a joint return for that year, and to that end requested the petitioner to furnish his accountant with the information pertaining to her income tax liability for 1951. The petitioner knew that she was required to file an income tax return for 1951 and had no intention of failing in that duty. She furnished the required information to Salisbury but she did not sign any return for that year. Salisbury informed her at the time that he had prepared a return, had signed her name to it, and it had been sent in.
>
> Salisbury incorporated the information furnished him by the petitioner in a joint return for the petitioner and her husband, it bore the names of the husband and of the wife, it included the income, deductions, exemptions, and credits of each, and signed to it were the names of each. * * *

Here, Jack and Dorothy were not living together when the 1946 and 1948 returns were filed. In April 1946, Jack moved Dorothy and their two children to Dallas where they resided during the taxable years in question. It is true they were not divorced until December 5, 1949, but they did not live together as husband and wife after April 1946, when Jack moved Dorothy and the children to Dallas. Dorothy was not employed. The only money that she received from Jack was support money which he sent to her for the support of herself and the children. She gave no accountant any information concerning income tax matters. In fact, she testified that she knew nothing about any income tax returns filed during 1946 and 1948 which purported to be joint returns for herself and Jack and did not authorize the filing of such returns or the signing of such returns in her name. Under these facts and other facts incorporated in our Findings of Fact, we think the instant case is distinguishable on its facts from *Muriel Heim, supra*.

As to the purported joint return which was filed for the calendar year 1947, the facts are different. Dorothy conceded in her testimony that her signature on this return is genuine. She said that she signed it at the request of Jack and that when she signed it the return had not been filled out. We have no reason to doubt the correctness of her story about the matter. But we do not think petitioner can now be heard to say that the return was not a joint return. She signed it voluntarily. She evidently knew that it was Jack's intention to fill out the return and file it as his return and petitioner's return. While it is doubtless true, as Dorothy testified at the hearing, that she knew nothing about the law governing the filing of income tax returns, we think she did know enough about such matters as to know that the 1947 return which she signed was an income tax return and that her husband intended to file it. When a spouse signs a joint income tax return, though the return is then only a blank, the return is deemed to be a joint return when filled out and filed and the spouse is jointly and severally liable for any deficiencies which may be correctly determined. See *Myrna S. Howell*, 10 T. C. 859, affd. (C. A. 6) 175 F. 2d 240. In that case the 1940 and 1942 returns were filed as joint returns of the taxpayer and her husband and bore the signature of Myrna. In holding that these returns were joint returns, we said:

It is not important that the petitioner signed the returns in blank. Presumably, she knew what she was signing and that her husband would prepare the returns. * * *

We sustain respondent's determination that the return for 1947 was a joint return of Jack and Dorothy, who were then husband and wife, and not divorced.

Petitioner contends in the alternative that if we should hold that the 1947 return is a joint return that, in that event, the statute of limitations has barred assessment of the deficiencies. The return was filed March 28, 1948, and the deficiency notice was mailed January 22, 1952. It is plain that more than 3 years had elapsed after the filing of the return before the deficiency notice was mailed. Therefore, the 3-year statute of limitations bars assessment of the deficiency unless some of the exceptions to the running of the statute of limitations apply. In the instant case, respondent introduced in evidence a waiver signed by Jack and Dorothy dated February 12, 1951, which gave the Commissioner the right to assess taxes against them for the taxable year ended December 31, 1947, at any time on or before June 30, 1952. Therefore, unless this waiver was a forgery so far as Dorothy is concerned, it is effective to stop the running of the statute of limitations. There is no evidence nor claim that the signature of Dorothy to this waiver is not genuine. We hold, therefore, that the waiver was effective to stop the running of the statute of limitations and that the

deficiency notice dated January 22, 1952, was timely mailed. Dorothy's plea of the statute of limitations as to 1947 is not sustained.

No authorities need be cited that the deficiency in income tax determined against Jack and Dorothy, using their joint return for 1947 as a basis for the adjustments, is presumed to be correct. Dorothy has not introduced any evidence to show that the adjustments made by the Commissioner to the income as reflected on the joint return are incorrect. In fact, her testimony was that she knew nothing whatever about Jack's books and records and had no information concerning his income in any of the taxable years, including the year 1947. We, therefore, hold that Dorothy is jointly and severally liable for the deficiency in income tax which the Commissioner has determined for the year 1947.

However, the question of petitioner's liability for additions to tax for fraud determined by the Commissioner against Jack and Dorothy, husband and wife, is a very different matter. The law places upon the Commissioner the burden of proof to show that part of the deficiency is due to fraud with intent to evade tax. The Commissioner introduced no evidence of any kind to show that any part of the deficiency determined against Dorothy for the year 1947 is due to fraud with intent to evade the tax. His only reliance, in contending that Dorothy is liable for the addition to tax for fraud which he has imposed for the year 1947, is the stipulation which he filed at the hearing signed by Richard A. Jennings, as counsel for petitioner Jack Douglas, and by John Potts Barnes, Chief Counsel, Internal Revenue Service, in which it is agreed that Jack is liable for the addition to tax for fraud of $1,455.76 for the year 1947. This stipulation is not signed by Jack at all. We think this stipulation by which Jack's attorney agreed that Jack was liable for the 1947 addition to tax for fraud is not the "clear and convincing" evidence required by law to establish fraud for which Dorothy is liable. At the time the stipulation was signed and filed, Dorothy had been divorced from Jack for more than 6 years. Jack was not present at the trial of this proceeding and did not testify. Dorothy had nothing whatever to do with the preparation or the filing of this stipulation. While, no doubt, the stipulation is binding upon Jack as to the deficiencies determined against him and also the additions to tax for fraud, it is not binding upon Dorothy.

We hold that Dorothy is liable for the deficiency in income tax for the year 1947 because the determination by the Commissioner of the deficiency is presumptively correct. She is not liable for the addition to tax for fraud because the Commissioner has not borne his burden of proof so far as Dorothy is concerned. See *Muriel Heim, supra.*

*Docket No. 39979.*

This docket number involves a deficiency in income tax which the Commissioner determined against petitioner individually for the year 1949 of $2,575.29. Details as to how the Commissioner arrived at the $12,013.67 community income which he determined against Dorothy are given in our preliminary statement and will not be repeated. The Commissioner did not determine any addition to tax for fraud against Dorothy for 1949.

Petitioner, in her original petition, assigned several errors contesting the adjustments which had been made by the Commissioner to the income of $2,005.80 "disclosed by joint return filed." These adjustments and assignments of error contesting them need not be enumerated here. Petitioner did not offer any evidence with reference to the adjustments which the Commissioner had made. At the hearing petitioner filed an amendment to petition in which the following additional assignment of error was made:

(f) Respondent erred in attributing any of the income earned by Jack Douglas during the calendar year 1949 to petitioner, Dorothy Sullivan, formerly Dorothy Douglas.

This amendment to the petition added the following additional facts in support of the assignments of error:

(k) Petitioner, Dorothy Sullivan, formerly Dorothy Douglas, and her former husband, Jack Douglas, were separated in April 1946 and from that date on there was no joint ownership of income. Petitioner and her former husband were divorced December 5, 1949.

(l) Petitioner, Dorothy Sullivan, formerly Dorothy Douglas, was not employed during the year 1949.

A return purporting to be a joint return of Jack and Dorothy was filed for the year 1949 and this return was signed by Jack and also bears a signature which purports to be that of Dorothy. However, she testified that the signature was not hers, that she never saw the return, and knew nothing at all about it. The Commissioner concedes that it was not a joint return because the parties were divorced December 5, 1949. The Commissioner concedes in his brief that "Joint returns cannot be filed by persons who are not married at the end of the calendar year. Reg. 111, Sec. 29.51–1 (b) (1)." This situation should not be confused with those cases where the parties were divorced under an interlocutory decree which did not become final in the taxable year. *Marriner S. Eccles*, 19 T. C. 1049, affd. (C. A. 4) 208 F. 2d 796, and other cases which have followed it.

Petitioner, in her brief, attacks the determination of the deficiency against her for the year 1949 on two grounds: (1) The financial

partnership between Jack and Dorothy under the community property laws of the State of Texas terminated by mutual understanding when they permanently separated in April 1946, and Dorothy did not have income after that date solely because of the marital relationship, and (2) alternatively, Dorothy contends that the respondent's determination is based upon an arbitrary calculation and is void upon its face.

We shall first take up and decide petitioner's contention (1) because if it is correct, petitioner will prevail and it will be unnecessary to pass upon her alternative contention (2).

As to contention (1), it is clear that petitioner was unemployed in 1949 and received no salary or wages. If she is taxable on any income for that year it will have to be because she was the owner of part of the community income which was earned in 1949 until the date of her divorce from Jack, December 5, 1949. There is no doubt but that in April 1946, when Jack moved Dorothy and their two children to Dallas and purchased them a home there and continued himself to live in Lubbock, that the parties intended a permanent separation. They never lived together as husband and wife thereafter.

In *Chester Addison Jones*, 31 B. T. A. 55, aff'd. (C. A. 5) 82 F. 2d 329, we held that spouses in Texas who have already separated or determined upon immediate separation may, by agreement, determine the distribution of their property and dissolve the community of property. Following such an agreement the income earned by each spouse (even though earned before divorce) is taxable to that spouse alone. Did Jack and Dorothy have any such agreement when they separated in April 1946, or at any time thereafter prior to their divorce on December 5, 1949? They certainly had no written agreement which "dissolved the community of property" such as was entered into by A. W. SoRelle and his then wife, Mabel, on February 19, 1946, after they had agreed to permanently separate on January 24, 1946. See *Elsie SoRelle*, 22 T. C. 459. There is no evidence that they had any oral agreement to "dissolve the community of property" between them.

The substance of Dorothy's testimony was that in April 1946 she and Jack permanently separated and never thereafter lived together as husband and wife. Also she testified that she knew nothing about the income which Jack earned after the separation agreement and that she received none of it except the amount of support which Jack furnished her and the children after the separation and up to the time of the divorce. How much these support payments were in the taxable years 1946, 1947, 1948, and 1949, the record does not show. Jack did not testify.

On the strength of the testimony in the record we cannot hold that after the separation in April 1946 and prior to the divorce on December 5, 1949, Jack and Dorothy entered into an agreement to "dissolve the community of property" between them. The division of property between Jack and Dorothy, if any, at the time of the divorce is not shown. We hold that petitioner's ground (1) mentioned above has not been proved. As to this part of the issue involved in Docket No. 39979, the Commissioner is sustained.

We next take up petitioner's alternative contention (2). In our preliminary statement we pointed out that the Commissioner in his determination of the deficiency against Dorothy for the year 1949, determined that her net income for that year was $12,013.67. His method of arriving at this determination was also given. Petitioner contends that this determination of the Commissioner was based upon an arbitrary and erroneous mathematical calculation. Petitioner, in her brief, says of the determination made by the Commissioner, as follows:

It is void upon its face and there is absent the usual presumption of correctness that attaches to the Commissioner's determination. The books and records of Jack Douglas, upon which the notice of deficiency was based, were available to the Government, and they could have determined with exactitude Jack's earnings up to December 5, 1949, the date of the divorce. These records were never seen by Dorothy Sullivan and were unavailable to her. Instead of following this course required of him by law and his own rulings, the Commissioner arbitrarily determined that the income he computed for 1949 had been earned in equal amounts each month of the year, and by a mathematical calculation allocated 11/12th of this as income for the period of marriage. He then, by a further calculation, attributes one-half of this to Dorothy Sullivan as her share of community income. It is evident that Jack's income could well have all been earned during the last half of the year, or the last quarter of the year, or the last month of the year, or even the last week of the year. Any method which bases income upon an arbitrary calculation is erroneous and void upon its face and there is no presumption that it is correct. * * *

We do not agree to petitioner's position as stated in the foregoing quotation from her brief. We do not agree that the Commissioner's determination that $12,013.67 of the income of $26,211.65 of Jack from his business in 1949 was the community property of petitioner, that it is an arbitrary calculation, and that it is erroneous. See *Harold K. Hockaday*, 22 T. C. 1327. In that case the Commissioner had determined that eleven-twelfths of one-half of Green's (former husband of Lois Hockaday from whom she was divorced May 31, 1948) one-half of the partnership income for the fiscal year ended June 30, 1948, was the property of Lois on account of her community interest and should be taxed to her in her fiscal year beginning June 1, 1948, and ending May 31, 1949. On these facts we held that Lois had an eleven-twelfths community property interest in one-half of Green's one-half of the partnership income for the partnership year ended

June 30, 1948, and was taxable thereon. The Commissioner's determination was sustained. In so holding we said: .

As we view it, when the partnership earnings of Green and Rosson were ascertained for its fiscal year ended June 30, 1948, then Lois was the owner of eleven-twelfths of one-half of Hubert's one-half of the partnership earnings and would be taxable thereon. * * *

It is true that in the *Hockaday* case, *supra*, the community property earnings were from a law partnership in which Green was a partner but we do not see where this makes any difference as to the rule to be followed in such cases. The fact that the earnings here were from a business carried on by Jack as a sole proprietorship instead of as a partnership makes no valid distinction as we see it.

The Commissioner's determination that the income of Jack's business in 1949 was $26,211.65 and his allocation of $12,013.67 of the amount to Dorothy as her share of community property is presumed to be correct. There is no evidence before us that this determination was wrong and we, therefore, sustain it. Cf. *Muriel Oakes Ames*, 30 B. T. A. 516. In the *Ames* case we held that the husband's salary for 1930 was to the extent received prior to the separation agreement taxable as community income, one-half to each, and that, in the absence of evidence of how much salary was received before such agreement and how much after, all is taxable as community income as the Commissioner determined.

On the authorities above cited, we sustain the Commissioner in his determination of the deficiency for the year 1949.

*Decisions will be entered under Rule 50.*