Richard A. Battaglini v. Commissioner.
Battaglini v. Commissioner
Docket Nos. 2081-64, 4065-65.
United States Tax Court
T.C. Memo 1967-76; 1967 Tax Ct. Memo LEXIS 184; 26 T.C.M. (CCH) 384; T.C.M. (RIA) 67076; April 12, 1967
Richard A. Battaglini, pro se, 111 Lincoln Ave., Endicott, N. Y. Julian I. Jacobs, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DREENNEN, Judge: Respondent determined deficiencies in petitioner's income tax for the year 1960 in the amount of $2,739.88 and for the year 1961 in the amount of $1,832.58. Various concessions were made by both parties prior to the trial of these consolidated cases. A Rule 50 computation *185 will be necessary, therefore, regardless of the disposition of the sole remaining issue, which is whether the returns filed by petitioner for 1960 and 1961, which were not signed by petitioner's wife, were joint returns. Findings of Fact The stipulated facts are found as stipulated. Petitioner is an attorney residing in Endicott, N. Y. Petitioner filed income tax returns for the calendar years 1960 and 1961 with the then district director of internal revenue, Syracuse, N. Y.
Petitioner filed an original and an amended return for each of the years in issue. Petitioner prepared the original return for 1960, which was filed on or about April 17, 1961. The amended return for 1960 and the original and amended returns for 1961 were prepared by Stephen Ricciardi, a public accountant, who had been employed by petitioner, sometime prior to October 1961, to conduct a complete audit of petitioner's income and expenses for 1960 and 1961. In addition, Ricciardi was to set up a system for properly accounting for the income and expenses of petitioner's office. The complete audit was desired because the Internal Revenue Service was examining petitioner's tax liability for prior years. At *186 the time Ricciardi was engaged by petitioner, a criminal prosecution of petitioner for failure to file income tax returns for the years 1957 and 1958 was either pending or imminent. There was also at that time a possibility that disbarment proceedings against petitioner would be instituted. Petitioner subsequently pleaded guilty for failure to file an income tax return for 1 year. The disbarment proceedings against petitioner were instituted and resulted in a period of suspension. At the top of page 1 of each of the returns for 1960 and 1961 were instructions to include the names of husband and wife in the caption if the return was intended to be a joint return. At the bottom of page 1 of each of the returns for 1960 and 1961 were instructions that "BOTH HUSBAND AND WIFE MUST SIGN" if the return was intended to be a joint return. Petitioner's wife did not sign any of the returns and her name does not appear on the signature lines at the bottom of any of the returns. Only the petitioner's name appears in the caption of the original return for 1960. The captions of the amended return for 1960, which was dated October 26, 1961, and both the original and amended returns for 1961, which *187 were dated April 16, 1962, and July 18, 1962, respectively, contain the names of both petitioner and his wife. The question on both returns for 1960 as to whether petitioner's wife was filing a separate return is answered "No." On both returns for 1961 the block for "Married filing joint return" is checked. All of the returns reflect the four personal exemptions of petitioner, his wife, and their two children. Income and deductions relating to rental property to which petitioner's wife held the title are reflected on all of the returns. Petitioner's wife had no income which was not reflected in the returns. The rates of tax prescribed for married taxpayers filing jointly were used in computing the taxes payable. Petitioner and his wife lived together throughout the years in question. Neither petitioner nor his wife was a nonresident alien and they had the same taxable years. Petitioner's wife did not file separate returns for the years in question. A letter of transmittal attached to petitioner's original return for 1960 and signed by petitioner referred only to petitioner. Letters of transmittal attached to the amended return for 1960 and to both of the returns for 1961, all signed *188 by Ricciardi, all refer to the petitioner as the taxpayer in the singular. Petitioner did not discuss the filing of income tax returns for 1960 and 1961 with his wife and he deliberately refrained from attempting to obtain her signature on the returns. Petitioner's wife was in a state of depression as a result of petitioner's income tax difficulties described above and petitioner wanted to avoid the adverse effect on his wife's peace of mind which any discussion of income tax matters would produce. Petitioner and Ricciardi, his accountant, thought that a valid joint return could be made without the signature of petitioner's wife. Although petitioner's wife is still living, she was not produced as a witness because of petitioner's opinion that her appearance in court would affect her health unfavorably. The income and expenditures relating to rental property of which petitioner's wife was the title owner were handled by petitioner's secretary. The gross rents received on properties in the name of petitioner's wife amounted to $1,687.50 in 1960 and $2,175 in 1961. A special bank account was maintained for transactions concerning the rental property of both petitioner and his wife. *189 Petitioner's wife had no knowledge of or control over the income from the rental property which was in her name. As a result of these arrangements for dealing with the rental property, Ricciardi was able to obtain the necessary information concerning the income of petitioner's wife from petitioner's secretary. Pursuant to petitioner's instructions, Ricciardi did not discuss the matter with petitioner's wife. Respondent has determined that the returns filed by petitioner for 1960 and 1961 were petitioner's separate returns and that the tax should be computed accordingly. The parties have stipulated that petitioner's taxable income was $9,578.05 for 1960 and $15,717.60 for 1961 and that petitioner's wife had a net rental loss of $179.56 for 1960 and net rental income of $342.51 for 1961. Finding of Ultimate Fact The returns filed by petitioner for the taxable years 1960 and 1961 were not joint returns of petitioner and his wife. Opinion Section 6013(a) of the 1954 Code provides that "A husband and wife may make a single return jointly of income taxes * * * except as provided below." Section 6013(b) provides that a husband and wife, who meet the requirements, may file a joint *190 return for a taxable year even though one of them had already filed a separate return for that year and even though the time for filing a return for that year had expired, subject to certain exceptions. There is no question here, as can be determined by comparing the recitations in our findings of fact with the requirements of the law, that petitioner and his wife were qualified to file joint returns and amended joint returns for each of the years 1960 and 1961. And there is little question in the writer's mind that petitioner intended at least the amended return for 1960 and both of the returns for 1961 to be joint returns. There can be little doubt that the last-mentioned returns were prepared, with respect to the income and deductions, the captions, the computations, and the answers to questions reported thereon, as joint returns. The only problem is that joint returns must be intended as such by both parties, Arlington F. Brown, 24 T.C. 256, 265; Elsie S. Bour, 23 T.C. 237, 239; and there is no evidence here that petitioner's wife had any intention one way or the other with respect to these returns. Section 1.6013-1(a)(2), Income Tax Regs. *191 , provides that a joint return of a husband and wife (if not made by an agent) [1] shall be signed by both spouses, and the forms on which these returns were filed clearly indicate the same. The statutes do not specifically require that the signatures of both spouses be affixed to a return to make it a joint return, and the absence of the signature of one spouse on the return does not necessarily preclude it from being treated as a joint return. The intent of both spouses is the critical question - and that is a question of fact to be determined from all the evidence surrounding the filing of the returns. Alma Helfrich, 25 T.C. 404. But the presence or absence of the signatures of both spouses on the return is entitled to considerable weight in determining the intent of the parties. McCord v. Granger, 201 F. 2d 103; Eva M. Manton, 11 T.C. 831. The signature of petitioner's wife was not affixed to any of the four returns filed by petitioner. There is no evidence that she explicitly intended that these returns be joint returns, nor that she explicitly consented *192 thereto. In fact the evidence points to just the contrary. Neither petitioner nor Ricciardi ever consulted her about it or asked her to sign the returns. Petitioner may have felt that he had good reason for not doing so - but this has nothing to do with his wife's intention with respect to these returns; nor does the fact that petitioner and Ricciardi may have thought that a joint return could be filed without her signature. Petitioner's wife did not testify, for reasons best known to petitioner. Petitioner relies primarily on the doctrine of tacit consent that was developed in Joseph Carroro, 29 B.T.A. 646, 650, [2] and followed in subsequent cases, see, e.g., Muriel Heim, 27 T.C. 270, affd. 251 F. 2d 44; Hyman B. Stone, 22 T.C. 893; W. L. Kann, 18 T.C. 1032, affd. 210 F. 2d 247, certiorari denied 347 U.S. 967; Myrna S. Howell, 10 T.C. 859, affirmed per curiam 175 F. 2d 240, in support of his position that these returns should be recognized as joint returns. It is true that some of the factors relied on in those cases are present here, such as the facts that petitioner's *193 wife did not file separate returns and her income was included in the returns filed by petitioner. These factors are not entitled to much weight here, though, where it is evident that petitioner's wife had nothing to do with the income received on the properties held in her name, did not know the net amount thereof, and probably had no idea that she might have been required to file returns. There is no evidence that she filed either joint or separate returns for years preceding those here involved. And furthermore it is doubtful that the doctrine of tacit consent is applicable here. That doctrine as applied by this Court was fully discussed in Vincent S. Hennen, 35 T.C. 747. As was concluded in the opinion in that case, the doctrine of tacit consent has been applied exclusively in cases where respondent *194 asserted that a joint return had been made and sought to impose upon the nonsigning spouse joint and several liability for the deficiencies which were determined. "The tacit consent presumption is nothing more or less than the presumptionof correctness attaching to respondent's determination that a joint return was in fact intended." Vincent S. Hennen, supra, at 749. In order to overcome the respondent's determination that a joint return was intended, the nonsigning spouse must present credible evidence that a joint return was not intended. Cf. Vincent S. Hennen, supra; Jack Douglas, 27 T.C. 306, affirmed sub nom. Sullivan v. Commissioner, 256 F. 2d 4; Arlington F. Brown, supra; Elsie S. Bour, supra; Myrtle O. Calhoun, 23 T.C. 4. In this case, as in Vincent S. Hennen, supra, there is a presumption against the tacit consent of petitioner's wife to the treatment of these returns as joint returns, arising from the determination by respondent that no such consent to the filing of joint returns was given by the wife. Petitioner has offered no convincing evidence to overcome such a *195 presumption; petitioner's failure to prove that his wife was aware that she was receiving income from the rental properties makes her failure to file separate returns of little significance. Cf. Alma Helfrich, Elsie S. Bour, Myrtle O. Calhoun, all supra. Moreover, the facts that petitioner's wife did not sign any of these returns, was not asked to sign or even consulted about it, and the implication derived from petitioner's testimony that he himself did not intend that his wife should be exposed to the possible liability involved in joint returns, more than outweigh any presumption that petitioner's wife either intended to file, or tacitly consented to the filing of, joint returns that might arise out of her failure to file separate returns. Our finding of ultimate fact resolves this issue in favor of respondent; however, because of concessions of the parties on other issues, Decisions will be entered under Rule 50. Footnotes
1. There is no claim of agency here and there is no evidence that would support it.↩
2. "And where the husband, under the circumstances here present, filed a joint return for himself and wife, without objection of the wife, who failed to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife and she will not be heard to the contrary after joint petition has been filed with the Board of Tax Appeals."↩