D. DOYL ADAMS, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

LOU ADAMS, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 21364–81, 23418–81.   Filed April 3, 1984.

*James A. Stroud*, for the petitioner in docket No. 21364–81.
*Donald L. Anderson, Jr.*, for the petitioner in docket No. 23418–81.
*Marty J. Raisanen*, for the respondent.

### OPINION

NIMS, *Judge*: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes:

| Docket No. | Petitioner | Year | Deficiency |
| --- | --- | --- | --- |
| 21364–81 | D. Doyl Adams | 1977 | $2,587.91 |
| 23418–81 | Lou Adams | 1977 | 2,166.00 |

The issues for decision are: (1) Whether the community and separate income allocations of D. Doyl Adams' (Mr. Adams) distributive share of partnership income for 1977 should be based upon an interim closing of the partnership's books as of

the date of petitioners' divorce or upon the partnership's 1977 Federal income tax return as adjusted for the portion of the year that petitioners were married; and (2) whether the community and separate income allocations of Mr. Adams' distributive share of partnership additional first-year depreciation should be based upon the portion of the year that petitioners were married or upon the purported purchase date of the depreciable property.

All of the facts have been stipulated and are found accordingly.

Petitioners resided in Abilene, Tex., at the time their respective petitions were filed in these cases.

Mr. Adams and Lou Adams (Mrs. Adams) were granted a judgment of divorce in Texas District Court on September 2, 1977. Both petitioners resided in Texas during 1977 and filed U.S. Individual Income Tax Returns for the taxable year 1977 on the cash receipts and disbursements method of accounting.

During 1977, Mr. Adams owned a 50-percent interest in a partnership, Daniel-Adams Co. (the partnership). The partnership was an accounting firm which reported its income and expenses on the cash receipts and disbursements method of accounting for the calendar year.

Mr. Adams ascertained his total taxable distributive share of partnership income for the year at issue by computing and then adding together what he considered to be the community and separate portions of his distributive share of partnership income for 1977. From an unaudited interim partnership statement of income for the 8 months ended August 31, 1977, he calculated total partnership net income of $99,264.63 as of the date of divorce. As owner of 50 percent of the partnership, his distributive share of the net income was $49,632.31. Mr. Adams reported one-half of this amount, $24,816.15, as his community portion of partnership income.

Mr. Adams subsequently calculated partnership net income for the remaining 4 months of 1977. He reported as separate income $7,320.50, the entire amount of his distributive share of partnership income earned after the divorce. Consequently, a total of $32,137 ($24,816.15 community portion plus $7,320.50 separate portion) of partnership income was reported by Mr. Adams on his 1977 income tax return.

Mr. Adams also deducted on his 1977 return $334.26 of additional first-year depreciation pursuant to section 179.[1] Mr. Adams ascertained the amount of this deduction by computing his distributive share of the total additional first-year depreciation attributable to the partnership.

In contrast to the interim income statement method used by Mr. Adams, Mrs. Adams computed her community portion of Mr. Adams' distributive share of partnership income for 1977 based upon the pro rata portion of the year that she was married. First, she calculated that Mr. Adams' distributive share of partnership net income for 1977 was $56,952.80.[2] Mrs. Adams concluded that eight-twelfths of this amount, $37,968.53, was community income because she was married to Mr. Adams for 8 months of the taxable year. Consequently, on her 1977 income tax return, she reported one-half of her computation of the community income, $18,984.27, as her community portion of Mr. Adams' distributive share of partnership income.

Mrs. Adams similarly computed her community portion of partnership additional first-year depreciation. She calculated that $222.84, eight-twelfths of Mr. Adams' $334.26 distributive share of partnership additional first-year depreciation, was the total community portion of the depreciation. Accordingly, Mrs. Adams deducted one-half of this amount, $111, on her 1977 income tax return as her community share of partnership additional first-year depreciation.

In the notice of deficiency issued to Mr. Adams dated June 9, 1981, respondent asserted two adjustments to Mr. Adams' 1977 taxable income. First, respondent determined that Mr. Adams' taxable distributive share of partnership income was $37,969 instead of $32,137. Respondent calculated Mr. Adams' community portion of his distributive share of partnership income based upon the pro rata portion of the year that he was married, i.e., using the same method that Mrs. Adams had used in computing her community income on her tax return. Respondent then added to this community portion Mr. Adams'

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the year in question. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] According to her petition, Mrs. Adams based her calculation on Mr. Adams' 1977 Partnership Schedule K–1.

separate income attributable to the partnership after the date of divorce to arrive at a total taxable income of $37,969.[3] Consequently, respondent increased Mr. Adams' taxable income for 1977 by $5,832.

Second, respondent determined that Mr. Adams should have deducted $223 instead of $334 for additional first-year depreciation. Respondent's calculation of Mr. Adams' distributive share of additional first-year depreciation was based again on the pro rata portion of the year that Mr. Adams was married.[4] Thus, respondent increased Mr. Adams' taxable income for 1977 by an additional $111.

In the notice of deficiency issued to Mrs. Adams dated June 9, 1981, respondent determined that Mrs. Adams' community portion of Mr. Adams' distributive share of partnership income was $24,705 instead of $18,873. Consequently, respondent increased Mrs. Adams' taxable income for 1977 by $5,832. Respondent determined Mrs. Adams' community portion based upon the August 31, 1977, interim income statement, i.e., using the same method that Mr. Adams had employed in computing his community portion on his 1977 income tax return.[5] Respondent did not adjust Mrs. Adams' deduction of $111 for her community portion of additional first-year depreciation.

Mr. Adams argues that the computation of the community and separate portions of his distributive share of partnership income for 1977 should be based upon an interim closing of the partnership's books. In addition, he contends that his deduction for his distributive share of partnership additional first-year depreciation is proper because the depreciable was purchased after September 2, 1977, the date of divorce.

Mrs. Adams argues that her computation of the community portion of Mr. Adams' distributive share of partnership

---

[3]The $37,969 amount was determined by respondent as follows: $18,984.27 community portion—see Mrs. Adams' computation at page 565 *supra*; $18.984.26 separate portion—four-twelfths (portion of the year not married) of $56,952.80 (Mr. Adams' distributive share of partnership net income for 1977).

[4]The $223 amount was determined by respondent as follows: $111.42 community portion—eight-twelfths (portion of the year married) of $334.26 (Mr. Adams' distributive share of partnership additional first-year depreciation), divided by one-half (Mr. Adams' community portion of the community deduction); $111.42 separate portion—four-twelfths (portion of the year not married) of $334.26 (Mr. Adams' distributive share of partnership additional first-year depreciation).

[5]The $24,705 is comprised of $24,816 of community income (see Mr. Adams' computation at page 564 *supra*), less additional first-year depreciation of $111.

income for 1977 based upon the partnership's Federal income tax return as adjusted for the portion of the year that she was married is the proper method of allocation.

Respondent recognizes that he asserted inconsistent positions in these cases. On brief, respondent states that his position "is essentially that of a stakeholder: income in the amount of $5,832.15 was unreported and should be reported" by either Mr. or Mrs. Adams. Respondent's primary position is that Mr. Adams' computation of the community portion of his distributive share of partnership income based upon an interim closing of the partnership's books is correct. Consequently, respondent contends that Mrs. Adams should compute her community portion on the same basis and would increase her taxable income by $5,832. However, respondent does not agree with Mr. Adams' computation of his share of additional first-year depreciation, and argues that the deduction should be based upon the portion of the year that Mr. Adams was married.

Alternatively, respondent contends that Mrs. Adams' computation of the community portion of Mr. Adams' distributive share of partnership income is correct. Accordingly, respondent would require Mr. Adams to compute his community portion on the same basis, which would increase his taxable income by $5,832.

We agree with respondent's alternative position and hold that Mr. Adams should compute the community portion of his distributive share of partnership income based upon the partnership's 1977 Federal income tax return as adjusted for the portion of the year that he was married. We also agree with respondent's argument that Mr. Adams should compute his community and separate portions of partnership additional first-year depreciation by the same method.

### Issue 1. Allocation of Mr. Adams' Distributive Share of Partnership Income

Section 702(a)(8) provides that "In determining his income tax, each partner shall take into account separately his distributive share of the partnership's taxable income or loss." Under Texas marital property law, community property consists of the property acquired by either spouse during mar-

riage, excluding separate property.[6] Consequently, Mr. Adams' distributive share of partnership income through September 2, 1977, the date of petitioners' divorce, constitutes community property.

Both respondent and petitioners agree that *Hockaday v. Commissioner*, 22 T.C. 1327 (1954), requires Mr. and Mrs. Adams each to report as income on their respective 1977 income tax returns one-half of the community property attributable to Mr. Adams' distributive share of partnership income for 1977 earned during petitioners' marriage. However, the parties disagree on the proper method to compute Mr. Adams' distributive share of partnership income as of the date of divorce.

In *Hockaday v. Commissioner, supra,* the taxpayer and her husband, a member of a law partnership, were married for 11 months of the partnership's fiscal year before they divorced. Respondent determined that the taxpayer was liable for her one-half community share of eleven-twelfths of her former husband's distributive share of the partnership's taxable income because they both resided in Texas, a community property State. The Court sustained respondent's determination, noting that there was "nothing in the the stipulated facts to show that [respondent's] allocation was unreasonable." *Hockaday v. Commissioner, supra* at 1331.

We reached a similar result in *Douglas v. Commissioner*, 27 T.C. 306 (1956), affd. sub nom. *Sullivan v. Commissioner*, 256 F.2d 4 (5th Cir. 1958). In *Douglas,* the taxpayer and her husband, both calendar year taxpayers and residents of Texas, were granted a divorce on December 5, 1949. Because the taxpayer was married for 11 months in 1949, respondent determined that she should report her community one-half share of eleven-twelfths of her former husband's income from his sole proprietorship for 1949. Relying on *Hockaday v.*

[6]Tex. Fam. Code Ann. sec. 5.01 (Vernon 1975) provides:

Section 5.01. Marital Property Characterized

    (a) A spouse's separate property consists of:

    (1) the property owned or claimed by the spouse before marriage;

    (2) the property acquired by the spouse during marriage by gift, devise, or descent; and

    (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

    (b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.

*Commissioner, supra,* we agreed with respondent and held that his determination of the taxpayer's community share of her former husband's income was not an arbitrary allocation. *Douglas v. Commissioner, supra* at 318–319.

The court in the above cases sustained respondent's allocations of community income because the allocations were neither arbitrary nor unreasonable. In the present cases, we similarly find respondent's methods of allocation to be both reasonable and nonarbitrary. A comparison of the two methods, however, reveals a significant difference in their accuracy and reliability. As explained below, we believe that an allocation based upon the partnership's Federal income tax return as adjusted for the portion of the year that petitioners were married provides a more accurate and reliable method of determining the community portions of partnership income than an allocation based upon the partnership's interim income statement. Consequently, we hold that the community portion of Mr. Adams' distributive share of partnership income should be determined by reference to the partnership's Federal income tax return.

As to the accuracy of each method, we initially note that the interim income statement is an internally prepared unaudited account of the partnership's earnings as of the date of divorce. Although the income statement might present an accurate financial summary of the partnership's net profit for the first 8 months of 1977, it is not an accurate statement of partnership taxable income. The interim statement does not include a provision for depreciation, nor for other relevant items such as investment tax credit and additional first-year depreciation. In addition, the interim statement contains a deduction for goodwill, a nondeductible capital expenditure.[7] The computation of the community portion of Mr. Adams' distributive share of partnership income based upon the interim income statement will consequently contain inaccuracies for tax purposes.

In contrast, an allocation based upon the portion of the year that petitioners were married utilizing the partnership's Federal income tax return eliminates the inaccuracies associated with the interim statement. The partnership's income tax

---

[7]Sec. 1.167(a)–3, Income Tax Regs.

return is prepared for the specific purpose of ascertaining partnership taxable income which includes appropriate items such as depreciation. We therefore find an allocation based upon the partnership's Federal income tax return to be a more accurate measure of the community portion of Mr. Adams' distributive share of partnership taxable income.

The second factor we have considered in examining the two allocation methods is reliability. While the partnership's Federal income tax return is filed under the penalty of perjury, the interim income statement is merely an unaudited statement of partnership earnings as of the time of divorce. In addition, the interim statement was presumably prepared at least in part by Mr. Adams, a C.P.A. familiar with tax law and accounting. Although we found no evidence which would indicate that the interim statement was manipulated to benefit Mr. Adams,[8] we nonetheless must conclude that the possibility of bias in his favor existed. For these reasons, we find the interim statement based on the facts herein to be a less reliable method of allocation as compared with the partnership's Federal income tax return.[9]

Accordingly, we hold that the determination of the community portion of Mr. Adams' distributive share of partnership income should be based upon the partnership's Federal income tax return as adjusted for the portion of the year that petitioners were married.

### Issue 2. Allocation of Mr. Adams' Distributive Share of Partnership Additional First-Year Depreciation

In 1977, section 179[10] allowed a taxpayer to include addi-

---

[8]We note that the partnership reported income on the cash receipts and disbursements method of accounting, which allows the opportunity for short-term control over the timing of the recognition of income and expenses.

[9]We note that the parties have not raised the contention that Mrs. Adams was a partner.

[10]Section 179 provided:

(a) GENERAL RULE.—In the case of section 179 property, the term "reasonable allowance" as used in section 167(a) may, at the election of the taxpayer, include an allowance, for the first taxable year for which a deduction is allowable under section 167 to the taxpayer with respect to such property, of 20 percent of the cost of such property.

(b) DOLLAR LIMITATION.—If in any one taxable year the cost of section 179 property with respect to which the taxpayer may elect an allowance under subsection (a) for such taxable year exceeds $10,000, then subsection (a) shall apply with respect to those items selected by the taxpayer, but only to the extent of an aggregate cost of $10,000. In the case of a husband and wife who file a joint return under section 6013 for the taxable year, the limitation under the preceding sentence shall

tional first-year depreciation in his reasonable allowance for depreciation under section 167(a) in the amount of 20 percent of the cost of certain designated property. Mr. Adams' uncon-

---

be $20,000 in lieu of $10,000.

(c) ELECTION.—

(1) IN GENERAL.—The election under this section for any taxable year shall be made within the time prescribed by law (including extensions thereof) for filing the return for such taxable year. The election shall be made in such manner as the Secretary may by regulations prescribe.

(2) ELECTION IRREVOCABLE.—Any election made under this section may be not revoked except with the consent of the Secretary.

(d) DEFINITIONS AND SPECIAL RULES.—

(1) SECTION 179 PROPERTY.—For purposes of this section, the term "section 179 property" means tangible personal property—

(A) of a character subject to the allowance for depreciation under section 167,

(B) acquired by purchase after December 31, 1957, for use in a trade or business or for holding for production of income, and

(C) with a useful life (determined at the time of such acquisition) of 6 years or more.

(2) PURCHASE DEFINED.—For purposes of paragraph (1), the term "purchase" means any acquisition of property, but only if—

(A) the property is not acquired from a person whose relationship to the person acquiring it would result in the disallowance of losses under section 267 or 707(b) (but, in applying section 267(b) and (c) for purposes of this section, paragraph (4) of section 267(c) shall be treated as providing that the family of an individual shall include only his spouse, ancestors, and lineal descendants),

(B) the property is not acquired by one component member of a controlled group from another component member of the same controlled group, and

(C) the basis of the property in the hands of the person acquiring it is not determined—

(i) in whole or in part by reference to the adjusted basis of such property in the hands of the person from whom acquired, or

(ii) under section 1014(a) (relating to property acquired from a decedent).

(3) COST.—For purposes of this section, the cost of property does not include so much of the basis of such property as is determined by reference to the basis of other property held at any time by the person acquiring such property.

(4) SECTION NOT TO APPLY TO TRUSTS.—This section shall not apply to trusts.

(5) ESTATES.—In the case of an estate, any amount apportioned to an heir, legatee, or devisee under section 167(h) shall not be taken into account in applying subsection (b) of this section to section 179 property of such heir, legatee, or devisee not held by such estate.

(6) DOLLAR LIMITATION OF CONTROLLED GROUP.—For purposes of subsection (b) of this section—

(A) all component members of a controlled group shall be treated as one taxpayer, and

(B) the Secretary shall apportion the dollar limitation contained in such subsection (b) among the component members of such controlled group in such manner as he shall by regulations prescribe.

(7) CONTROLLED GROUP DEFINED.—For purposes of paragraphs (2) and (6), the term "controlled group" has the meaning assigned to it by section 1563(a); except that, for such purposes, the phrase "more than 50 percent" shall be shall be substituted for the phrase "at least 80 percent" each place it appears in section 1563(a)(1).

(8) DOLLAR LIMITATION IN CASE OF PARTNERSHIPS.—In the case of a partnership, the dollar limitation contained in the first sentence of subsection (b) shall apply with respect to the partnership and with respect to each partner.

(9) ADJUSTMENT TO BASIS; WHEN MADE.—In applying section 167(g), the adjustment under section 1016(a)(2) resulting by reason of an election made under this section with respect to any section 179 property shall be made before any other deduction allowed by section 167(a) is computed.

(e) REGULATIONS.—The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section.

tested distributive share of partnership additional first-year depreciation for 1977 is $334.26. Respondent determined that eight-twelfths of this amount was allocable to the community income of Mr. and Mrs. Adams because they were married for 8 months of the year. The remaining four-twelfths of additional first-year depreciation was allocated by respondent to Mr. Adams' separate income for 1977.

In accordance with the rule for allocation of partnership income set forth above, respondent's allocation of additional first-year depreciation is sustained because it is based upon the partnership's Federal income tax return.

Mr. Adams argues on brief that the depreciable property was purchased after September 2, 1977, the date of divorce, and therefore his entire distributive share of additional first-year depreciation should be allocated as a deduction from his separate income. Not only is there no evidence in the record supporting Mr. Adams' contention that the property was purchased after the date of divorce, but even if such evidence were present, we would nonetheless hold for respondent because, as we found above, an allocation based upon the partnership's Federal income tax return is, on this record, a more accurate and reliable method of allocation. We therefore uphold respondent's allocation of additional first-year depreciation.[11]

To reflect the foregoing,

*Decision will be entered for the respondent in docket No. 21364–81.*

*Decision will be entered for the petitioner in docket No. 23418–81.*

---

[11]We also note that Mr. Adams in his petition has asked the Court to award reasonable attorney fees under the authority of Pub. L. 94–559, 90 Stat. 2641, October 1976, amending 42 U.S.C. sec. 1988. This request is denied. *McQuiston v. Commissioner*, 78 T.C. 807 (1982), affd. 711 F.2d 1064 (9th Cir. 1983); Rule 231.