T.C. Memo. 1998-340


UNITED STATES TAX COURT


JAMES R. AND SUSAN B. BRICKMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21381-96.                    Filed September 23, 1998.


<u>Dan G. Baucum</u> and <u>William A. Roberts</u>, for petitioners.

<u>Michael C. Prindible</u> and <u>Helen T. Repsis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in and accuracy-related penalties on petitioners' Federal income tax as follows:

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-------------------|
| 1992 | $341,896  | $68,379           |

| 1993 | 51,328 | 10,266 |
| 1994 | 32,269 | 6,454 |

After concessions,[1] the issue for decision is whether certain net operating losses (NOL's) are reduced under section 108 because of discharge of indebtedness income (COD income).[2]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Dallas, Texas, at the time they filed their petition.

Petitioner James R. Brickman (James) invested, as a limited partner, in Sovereign Partners V, Ltd., a Texas limited partnership (the partnership). On or about May 23, 1984, the partnership was formed to acquire a tract of land in Flower Mound, Texas, develop the land into residential lots, and sell the lots to homebuilders (the project). James had a 74.1-percent limited partner interest in the partnership. The interest in the

---

[1] Respondent concedes the 1992 deficiency and the accuracy-related penalties for all years in issue.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

partnership was community property of petitioners.  In 1992, the partnership terminated.

The Second Amended and Completely Restated Certificate and Agreement of Limited Partnership (the partnership agreement) stated that each partner shall make, and be personally liable to make, additional capital contributions equal to any pro rata share of any debt service installment.  James never made any capital contributions to the partnership to allow the partnership to pay its debt.

On May 8, 1985, the partnership entered into a recourse all-inclusive promissory note (the note) with Sunbelt Service Corp. (the bank) in the amount of $12,500,000.  Additionally, James and two other partners in the partnership signed a personal guaranty agreement (the guaranty) for the bank.  The guaranty made James and the other two partners personally and jointly liable on the note.  Petitioner Susan B. Brickman (Susan) did not sign the guaranty.

The partnership, with the proceeds from the note, purchased real property in Flower Mound, Texas.  Initially, the partnership received approximately $9,900,000 in funding on the note.  In August 1987, the bank stopped funding the note because of government intervention into the bank's affairs.  At this time, the project was 75 percent complete.  After funding was cut off by the bank, the partnership did not have the money needed to

complete the project.  The partnership defaulted on the note, interest accrued, and it was not paid.

From 1984 through 1991, the partnership allocated to James at least $6,166,647 in partnership losses (the allocated losses). On their 1984 through 1991 joint Federal income tax returns, petitioners did not fully use the allocated losses.[3]  Therefore, a portion of the allocated losses became NOL carryovers.

On or about April 9, 1991, and again on July 15, 1991, the bank sent a demand letter to the partnership and to the individual partners (including James).  On or about August 6, 1991, the bank conducted a foreclosure sale of the partnership's real property securing the note.  At the time of the foreclosure sale, the partnership owed $9,967,301 on the note.  The guarantors' exposure on the principal of the note was the same.

The bank issued a Form 1099 to the partnership that documented the foreclosure sale of the real property and the bank's forgiveness of the partnership's debt to the bank.  On its 1991 tax return, the partnership reported a loss in the amount of $5,455,004 as a result of the bank's foreclosure sale.  On its 1992 tax return, the partnership reported $14,094,231 in COD income from the discharge of the partnership's principal and

---

[3]  Petitioners, however, were able to use at least $3,053,203 of the allocated losses.

accrued interest indebtedness to the bank.[4]  The partnership treated the COD income as an item of partnership income and allocated the COD income separately to all of the partners, including James, pursuant to the "special allocation" provisions of the partnership agreement.  On the 1992 Form K-1 that the partnership issued to James, the partnership reported that it allocated $6,166,647 of COD income to James.

On petitioners' 1992 joint Federal income tax return, petitioners excluded $5,750,737 of the $6,166,647 of COD income from their joint gross income due to insolvency pursuant to section 108(a)(1)(B) (the insolvency exception) and reported $415,910 of the $6,166,647 of COD income.  Petitioners did not reduce a $487,730 NOL carryover from 1992 to 1993 (Susan's NOL) by the $5,750,737 of excluded COD income.[5]

---

[4]  The partnership reported the $14,094,231 of COD income on its 1992 tax return because that is when the period of limitations for collecting on the note expired.  Additionally, in 1992, the period of limitations for collecting on the guaranty also expired.

[5]  Petitioners, in an attachment to their 1992 Form 1040, explained the generation of Susan's NOL as follows:

|                         | Total      | James      | Susan      |
|-------------------------|------------|------------|------------|
| NOL generated in 1983   | $67,432    | $33,716    | $33,716    |
| NOL generated in 1984   | 1,063,747  | 531,873    | 531,874    |
| NOL generated in 1985   | 590,075    | 295,037    | 295,038    |
| NOL generated in 1986   | 352,211    | 176,105    | 176,106    |
| NOL generated in 1987   | 340,178    | 170,089    | 170,089    |
| NOL utilized in 1988    | (866,246)  | (433,123)  | (433,123)  |
| NOL generated in 1989   | 233,969    | 116,984    | 116,985    |
| NOL generated in 1990   | 454,053    | 227,026    | 227,027    |

(continued...)

OPINION

Respondent contends that petitioners must reduce Susan's NOL to zero because they excluded COD income pursuant to section 108.[6]  Petitioners first argue that James' release from his

_____

[5](...continued)

| | | | |
|---|---|---|---|
| NOL generated in 1991 | 878,025 | 439,012 | 439,013 |
| NOL before sec. 108 Reduction | 3,113,444 | 1,556,719 | 1,556,725 |
| Sec. 108 NOL Reduction in 1990 | (751,610) | (751,610) | -0- |
| Sec. 108 NOL Reduction in 1991 | (708,059) | (708,059) | -0- |
| NOL carryover to 1992 | 1,653,775 | 97,050 | 1,566,725 |
| NOL utilized in 1992 | (1,166,045) | (97,050) | (1,068,995) |
| Carryforward to 1993 | 487,730 | -0- | 487,730 |

[6]  Sec. 108, in pertinent part, provides:

(a) Exclusion From Gross Income.--

    (1) In General.--Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if--

        *   *   *   *   *   *   *

        (B) the discharge occurs when the taxpayer is insolvent,

        *   *   *   *   *   *   *

(b) Reduction of Tax Attributes.--

    (1) In General.--The amount excluded from gross income under subparagraph (A), (B), or (C) of subsection (a)(1) shall be applied to reduce the tax attributes of the taxpayer as provided in paragraph (2).

    (2) Tax Attributes Affected; Order of Reduction.-- Except as provided in paragraph (5), the reduction referred

(continued...)

guaranty generated the COD income and that Susan had no COD income because she was not liable under the guaranty.

Petitioners' argument is contrary to the facts. On the partnership's 1992 tax return, the partnership reported $14,094,231 in COD income from the discharge of the partnership's principal and accrued interest indebtedness to the bank. The partnership treated the COD income as an item of partnership income and allocated the COD income separately to James pursuant to the "special allocation" provisions of the partnership agreement. On the 1992 Form K-1 that the partnership issued to James, the partnership allocated $6,166,647 of COD income to James. Thus, the facts are that the COD income was not generated from James' release from his guaranty, but rather the COD income was generated by the discharge of the partnership's indebtedness, and the partnership made a special allocation of that income to James (i.e., it passed through the partnership interest).[7]

Petitioners next argue that COD income is not "income" to be divided between spouses under Texas community property law, that

---

[6](...continued)
to in paragraph (1) shall be made in the following tax attributes in the following order:

> (A) NOL.--Any net operating loss for the taxable year of the discharge, and any net operating loss carryover to such taxable year.

[7] Furthermore, we note that a guarantor generally does not recognize income when he is relieved of his guaranty obligation. See Landreth v. Commissioner, 50 T.C. 803, 812-813 (1968).

Susan did not recognize COD income (i.e., that COD income from the partnership did not pass through to Susan), and therefore petitioners were not required to reduce Susan's NOL.

Petitioners' contention that COD income is not income under Texas law is irrelevant.

> In dealing with the meaning and application of an act of Congress enacted in the exercise of its plenary power under the Constitution to tax income and to grant exemptions from that tax, it is the will of Congress which controls, and the expression of its will, in the absence of language evidencing a different purpose, should be interpreted "so as to give a uniform application to a nation-wide scheme of taxation". * * * Congress establishes its own criteria and the state law may control only when the federal taxing act by express language or necessary implication makes its operation dependent upon state law. [Lyeth v. Hoey, 305 U.S. 188, 194 (1938) (quoting Burnet v. Harmel, 287 U.S. 103, 110 (1932)).]

In the application of a Federal revenue act, State law determines the nature of the legal interest that the taxpayer had in the property or income sought to be reached by the statute. Morgan v. Commissioner, 309 U.S. 78, 82 (1940). "In the determination of ownership, state law controls. 'The state law creates legal interests but the federal statute determines when and how they shall be taxed.'" United States v. Mitchell, 403 U.S. 190, 197 (1971) (citations omitted). "Thus, with respect to community income, as with respect to other income, federal income tax liability follows ownership." Id. (citing Blair v. Commissioner, 300 U.S. 5, 11-14 (1937)); see also United States v. Mitchell, supra at 195 (stating that the Court looked to the

law of the State to determine the <u>ownership</u> of community property and community income).  Simply put, Federal law defines what is income for Federal income tax purposes, and State law determines who "owns", or has the right to, the income.

Federal law provides that, generally, a taxpayer must recognize income from the discharge of indebtedness.  Sec. 61(a)(12); <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1 (1931). The Code provides an exception to the recognition of COD income in cases where the discharge occurs when the taxpayer is insolvent.  See sec. 108(a)(1)(B); see also <u>Babin v. Commissioner</u>, 23 F.3d 1032, 1035 (6th Cir. 1994), affg. T.C. Memo. 1992-673.  Section 108(b)(1) provides in turn that, upon discharge, the taxpayer must reduce certain tax attributes by the amount of the COD income excluded from gross income.  Section 108(b)(2) provides that NOL's are the first tax attribute to be reduced,[8] and section 108(b)(3) provides that they be reduced dollar-for-dollar by the amount of the COD income excluded under section 108(a).

If the debtor is a partnership, then the gain or loss realized from the transfer of property in consideration of the reduction or discharge of a debt is passed through to each of the

---

[8]  A taxpayer can elect to reduce the basis of any depreciable property by the amount of debt discharged before reducing the amount of any other tax attributes.  Sec. 108(b)(5). Petitioners did not make such an election.

partners under section 702 in accordance with his or her interest in the partnership and is reflected in each partner's adjusted basis in the partnership pursuant to section 705(a).  See secs. 702(a)(1), (2), and (3), 705(a); Babin v. Commissioner, supra; Gershkowitz v. Commissioner, 88 T.C. 984, 1005 (1987).  In the case of a partnership, the insolvency exception to the recognition of COD income provided by section 108(a) is applied at the partner level.  See sec. 108(d)(6).

As we have found, the COD income was an item of partnership income that passed through to the partners.  We now turn to State law to ascertain who owned this income.

Texas is a community property State.  Tex. Fam. Code Ann. secs. 3.001-3.005 (West 1998); Lange v. Phinney, 507 F.2d 1000, 1005 (5th Cir. 1975).  Generally, spouses residing in a community property State are liable for the Federal income tax on one-half of their community income.  United States v. Mitchell, supra. Income and deductions attributable to community property are also petitioners' community property.  See Tex. Fam. Code Ann. secs. 3.001, 3.002; Adams v. Commissioner, 82 T.C. 563, 567-568 (1984); Hockaday v. Commissioner, 22 T.C. 1327, 1329 (1954); Harris v. Harris, 765 S.W.2d 798, 802 (Tex. App. 1989); Marshall v. Marshall, 735 S.W.2d 587, 594 (Tex. App. 1987).[9]

_____

[9] The decisions of the State's highest court are conclusive as to that State's law, but in the absence of a decision by that
(continued...)

Petitioners stipulated that the partnership interest was community property.  Under Texas law, therefore, income and deductions attributable to the partnership interest are petitioners' community property.

We conclude that Susan had a community interest in the COD income of the partnership that flowed through to James (i.e., she owned one-half of the COD income).  Thus, under section 108(b), petitioners must reduce Susan's NOL by her COD income.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[9](...continued)
court we may look to the State's lower courts' rulings and holdings.  Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).