T.C. Summary Opinion 2007-168

UNITED STATES TAX COURT

CHERYL KUNSMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8081-05S.                    Filed September 24, 2007.

Cheryl Kunsman, pro se.

<u>Lynn M. Curry</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.
Pursuant to section 7463(b), the decision to be entered is not
reviewable by any other court, and this opinion shall not be
treated as precedent for any other case.  Unless otherwise
indicated, subsequent section references are to the Internal

Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from a petition for judicial review of the denial of petitioner's request for relief from joint and several liability for 1999.  The issue for decision is whether petitioner is entitled to relief under section 6015(b), (c), or (f).

## Background

Some of the facts have been stipulated by the parties and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Ocala, Florida.  Petitioner and Raymond Kunsman (hereafter referred to as Mr. Kunsman or former spouse) married in 1993.  Petitioner invested her savings to start a retail floral and gift shop business in 1996, and she conducted her business throughout the year at issue.

Mr. Kunsman became unemployed in 1998, and he began drinking heavily.  Mr. Kunsman started hiding financial details from petitioner and took over the financial aspects of petitioner's business.  During 1998, he received a lump-sum distribution from his retirement account, the majority of which was rolled over into an Individual Retirement Account (IRA).  Mr. Kunsman withdrew funds from the IRA in 1999 and 2000 in the amounts of $29,925 and $51,518, respectively.  At the time the distributions

were made, Mr. Kunsman had not reached age 59½.  The IRA distributions were reported on Federal income tax returns that were filed with the IRS as joint returns by petitioner and Mr. Kunsman for 1999 and 2000.  No additional tax pursuant to section 72(t) was reported.  Petitioner and Mr. Kunsman separated in the fall of 2001 and were divorced in 2002.

Petitioner first learned that there were proposed adjustments to the 1999 tax return when respondent offset a claimed overpayment from her 2001 tax return against a tax balance due from 1999.[1]  The amount remaining unpaid for 1999 as of March 2005 was $1,582.58.

Petitioner timely requested relief from joint and several liability under section 6015 for 1999 and 2000.  Respondent granted petitioner relief under section 6015(c) for tax year 2000.  Respondent issued a Notice of Determination denying relief under section 6015(b), (c), and (f) for 1999.  Petitioner filed a timely petition for review of respondent's determination.

## Discussion

To support her request for relief from joint and several liability, petitioner asserts:  (1) That the 1999 tax return is

---

[1] Apart from respondent's reference to a defaulted statutory notice of deficiency issued to petitioner, the record does not chronicle the deficiency procedures followed by respondent. Petitioner does not dispute that a deficiency was properly assessed for 1999.

not a jointly filed return,[2] and (2) that even if the 1999 return is a jointly filed return, petitioner was unaware of the retirement distribution since it was not included on the 1999 Form 1040, U.S. Individual Income Tax Return, she signed.

The Court will treat these assertions as alternate defenses: (1) That the return filed is not a joint return because petitioner did not sign the return, and (2) that if the 1999 return is a valid joint return, petitioner is eligible for relief because she did not know about the early distribution from her former spouse's IRA.[3]

Relief Under Section 6015

A predicate to relief under section 6015 is that a joint return was filed. Sec. 6015(a)(1), (b)(1)(A). Accordingly, if the Court should find that petitioner did not file a joint return, we would be required to deny petitioner's claim for section 6015 relief. Raymond v. Commissioner, 119 T.C. 191, 194-197 (2002).

Married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). Generally, a joint return must be

---

[2] If we were to decide in favor of petitioner on this issue, petitioner would not be entitled to relief. Sec. 6015(a)(1), (b)(1)(A). Inasmuch as petitioner filed a joint return, we do not otherwise view petitioner's assertions as a bar to consideration of her claim for relief under sec. 6015.

[3] Rule 31(c) permits parties to set forth claims and defenses alternatively or hypothetically and allows parties to plead inconsistent claims and defenses.

signed by both spouses.  Sec. 1.6013-1(a)(2), Income Tax Regs.

However, where both spouses intend to file a joint return, the

failure of one spouse to sign the return will not preclude its

treatment as a joint return.  Estate of Campbell v. Commissioner,

56 T.C. 1, 12 (1971).  This is so even where the purported

signature of the nonsigning spouse is signed by another, provided

the couple has the intent to file jointly.  Heim v. Commissioner,

27 T.C. 270, 273-274 (1956), affd. 251 F.2d 44 (8th Cir. 1958);

Magee v. Commissioner, T.C. Memo. 2005-263.

Petitioner alleged in her petition that her former spouse

had admitted to a practice of showing her one form to review and

sign and then submitting a different form that he signed for her.

She acknowledged at trial that she glanced at and signed returns

for 1999 and 2000.  However, she claims that the returns

ultimately filed were not the returns she reviewed and signed.[4]

Despite petitioner's claim that her former spouse forged her

signature on the 1999 tax return, the Court construes

petitioner's testimony and other evidence in the record as

---

[4] Respondent contends that petitioner signed the 1999 return that was filed.  At trial, respondent conceded that the signature on the 2000 tax return was not made by petitioner but did not address whether the 2000 tax return was a joint return.  As discussed, the failure of one spouse to sign a tax return does not conclusively establish that the return is not a joint return. Respondent granted petitioner relief under sec. 6015(c) for 2000. Because a joint return is necessary for relief under sec. 6015, we presume that respondent concluded that the 2000 return was a joint return.

affirming that she intended to file a joint return with her former spouse.

Where a taxpayer signs a return in blank or signs a return without review, she remains bound by the joint return because of the intent to file jointly and to trust the other spouse properly to complete and file the return.  Douglas v. Commissioner, 27 T.C. 306, 313-314 (1956), affd. sub nom. Sullivan v. Commissioner, 256 F.2d 4 (5th Cir. 1958).  Petitioner trusted her former spouse to prepare and file the return, and apparently took no independent action to report her income or comply with filing requirements for the taxable year 1999.  Whether she signed her name or her former spouse signed her name, the 1999 return remains a joint return because of her intention to file jointly.  Federbush v. Commissioner, 34 T.C. 740, 756-758 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Peirce v. Commissioner, T.C. Memo. 1982-154.

In Shea v. Commissioner, 780 F.2d 561, 567 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310, a joint return was held invalid as to the taxpayer where the attorney and tax return preparer signed the taxpayer's name to the return, without her consent, without an opportunity for review, and without a power of attorney.  In contrast, petitioner in this case reviewed the return and had an opportunity to sign the return, propose changes, or refuse to sign the return.

We are satisfied that petitioner filed a joint Federal income tax return for 1999.

Each spouse filing a joint return is jointly and severally liable for the accuracy of the return and for the entire tax due for that year.  Sec. 6013(d)(3).  A spouse who has filed a joint return may, however, seek relief from joint and several liability by following the procedures established in section 6015.  Sec. 6015(a).

A taxpayer may be entitled to relief under section 6015(b), (c), or (f), and, except as otherwise provided in section 6015, the taxpayer bears the burden of proving her entitlement to relief.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

With respect to elections under section 6015(b) and (c), section 6015(e) grants this Court jurisdiction "to determine the appropriate relief available".  In contrast, we review denial of relief under section 6015(f), which permits the Commissioner to grant equitable relief, for abuse of discretion.  Fernandez v. Commissioner, 114 T.C. 324, 330-333 (2000); Butler v. Commissioner, 114 T.C. 276, 292 (2000).

### Section 6015(b)

Section 6015(b)(1) provides for relief from liability for tax attributable to an understatement if all five conditions set out in section 6015(b)(1)(A) through (E) are satisfied.

Section 6015(b)(1)(C) requires that in signing the return the individual seeking relief did not know and had no reason to know of the understatement. Relief under section 6015(b) is not provided to a spouse who turned a blind eye to facts that were available. <u>Charlton v. Commissioner</u>, 114 T.C. 333, 340 (2000).

Petitioner claims that there was no entry made on line 15a, Total IRA Distributions, of the 1999 Form 1040 she signed. Petitioner asserts that the 1999 tax return her former spouse presented to her reflected a greater Schedule C business profit than the amount as actually filed with the IRS. Petitioner alleges that her former spouse inflated the financial performance of her business so that he would not have to work and that he surreptitiously withdrew funds from his IRA to support the deception.

Petitioner suggests that her former spouse so controlled the financial details of her business that she was unaware of whether or not the business was profitable and whether the income therefrom could support the family.[5] Petitioner also suggests that she was unaware that Mr. Kunsman withdrew more than $80,000 between 1999 and 2000 in order to provide for financial obligations of the family and of her business. The Court is not

---

[5] The 1999 Schedule C, Profit or Loss From Business, reported gross receipts of $281,326.94 and net profit of $4,450.11. Petitioner testified that she knew the gross receipts were about $300,000 but that her former spouse led her to believe the profits from the business were between $20,000 and $30,000.

convinced that petitioner did not understand the business and have a sense of the profit therefrom.

The IRA distribution was reflected on the 1999 Form 1040, which the Court has found to be a joint return.  Petitioner was certainly aware of Mr. Kunsman's age in 1999.  Thus, petitioner shared with Mr. Kunsman the legal responsibility to ensure the proper reporting of the additional tax on an early distribution pursuant to section 72(t).

"A taxpayer is presumed to have knowledge of the tax consequences of a transaction".  Cheshire v. Commissioner, 115 T.C. 183, 197 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  Ignorance of the law is no defense.  Id. at 196.  In fact, petitioner acknowledged that both she and her former spouse were aware that a 10-percent additional tax was imposed on early withdrawals.

Based on the entire record, the Court finds that petitioner had actual knowledge of the income from the 1999 IRA distribution(s).  She also had actual knowledge that an additional tax is imposed by section 72(t).  Accordingly, she has failed to establish that "she did not know, and had no reason to know, that there was [an] understatement".  Sec. 6015(b)(1)(C).

The Court concludes that petitioner has failed to satisfy the requirements of section 6015(b)(1)(C).[6]  Therefore, petitioner does not qualify for relief from joint and several liability under section 6015(b)(1).

Section 6015(c)

Section 6015(c) provides proportionate tax relief (if a timely election is made) by allocating the deficiency between individuals who filed jointly but are no longer married, are legally separated, or have been living apart for a 12-month period.  Section 6015(c)(3)(C) prohibits such allocation if respondent demonstrates that petitioner had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency that is not allocable to petitioner.  Cheshire v. Commissioner, supra at 193.

After her divorce, petitioner filed a timely election and was prima facie eligible for relief under section 6015(c) for the portion of any deficiency properly allocable to her former spouse.  Sec. 6015(c)(1).

However, petitioner's election under section 6015(c) shall not apply if respondent demonstrates actual knowledge by petitioner of the IRA distribution, at the time she signed the

---

[6] The five criteria of sec. 6015(b)(1) are conjunctive. Having concluded that sec. 6015(b)(1)(C) is not satisfied, we need not, and do not, discuss the criteria of the other subparagraphs of sec. 6015(b)(1).

return.  Sec. 6015(c)(3)(C).  Respondent must demonstrate by a preponderance of the evidence that petitioner had "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)".  Cheshire v. Commissioner, supra at 195; Charlton v. Commissioner, 114 T.C. at 341-342.

As discussed above, we have found that petitioner had actual knowledge of the IRA distribution.  Therefore, petitioner is not eligible for relief under section 6015(c).[7]

Section 6015(f)

Where relief is unavailable under section 6015(b) or (c), section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability if it is inequitable to hold the individual liable, taking into account all the facts and circumstances.  Sec. 6015(f).  As discussed above, petitioner is not entitled to relief under section 6015(b) or (c).

Petitioner bears the burden of proving that respondent abused his discretion in denying relief under section 6015(f).  Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Cheshire v. Commissioner, supra at 198; Butler v. Commissioner, 114 T.C. at 292.

---

[7] Petitioner testified that her former spouse became violent at the end of their marriage in late 2001, but she did not demonstrate that her signing the 1999 joint return in 2000 was anything but voluntary.  Therefore, the exception for duress in sec. 6015(c)(3)(C) does not apply.

In Rev. Proc. 2003-61, 2003-2 C.B. 296, respondent has prescribed guidelines for the evaluation of requests for relief from joint or several liability under section 6015(f).[8] Respondent does not contest that petitioner meets the seven threshold conditions of Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297.

Where a liability is reported on a joint return, but is not paid, Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, provides circumstances under which the Commissioner ordinarily will grant relief. The additional tax under section 72(t) in this case was not reported on the joint return. Therefore, Rev. Proc. 2003-61, sec. 4.02, does not apply.

Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, provides a nonexclusive list of factors respondent considers in evaluating whether it would be inequitable to hold petitioner liable for all or part of an unpaid income tax liability or deficiency. The factors respondent considered are:

---

[8] Rev. Proc. 2003-61, 2003-2 C.B. 296, supersedes Rev. Proc. 2000-15, 2000-1 C.B. 447, and is effective for requests for relief filed on or after Nov. 1, 2003, and for requests pending as of Nov. 1, 2003, for which no preliminary determination letter had been issued as of Nov. 1, 2003. In this case, petitioner filed Form 8857, Request for Innocent Spouse Relief, in August 2003, and the initial denial occurred during or after April 2004. As no preliminary determination letter had been issued as of Nov. 1, 2003, Rev. Proc. 2003-61 guides respondent's analysis of petitioner's request.

1.  Marital status:  Petitioner is divorced from her former spouse.  This factor weighs in favor of relief.

2.  Economic hardship:  Respondent's tax examiner considered petitioner's submission in support of her request for relief from joint and several liability, noted that her income and expenses needed verification, and determined that refusal to grant relief would not cause petitioner to suffer economic hardship. Respondent's Appeals officer also determined from respondent's record and research that petitioner would not suffer an economic hardship as a result of remaining liable for the $1,582.58 balance due for 1999.

Respondent determines economic hardship by evaluating whether or not petitioner is able to pay her reasonable basic living expenses.  Rev. Proc. 2003-61, sec. 4.02(c), 2003-2 C.B. at 298 (referring to sec. 301.6343-1(b)(4), Proced. & Admin. Regs.).  It is petitioner's burden to show that her living expenses qualify, that those expenses are reasonable, and that she is unable to pay those expenses.  Monsour v. Commissioner, T.C. Memo. 2004-190.

Petitioner claimed that continuing liability for the 1999 deficiency would cause her economic hardship and asserted that her income was $1,000 per month while her expenses were $1,520 per month.  She offered no evidence of either income or expenses and no proof that the 1999 tax liability would render her unable

to pay her reasonable living expenses.  Such substantiation was particularly necessary in light of petitioner's assertion that her expenses already exceed her income by more than 50 percent each month.

Petitioner failed to demonstrate that she will be unable to pay reasonable basic living expenses if relief is denied.  We hold that respondent did not abuse his discretion in concluding that petitioner would not suffer economic hardship and that this factor weighs against relief.

3.  Knowledge or reason to know:  Petitioner claims ignorance of the IRA distribution.  The distribution was clearly shown on the joint tax return.  The deficiency results from the failure to report the section 72(t) additional tax.  We have previously held that petitioner had actual knowledge not only of the IRA distribution but also of the liability for additional tax on an early distribution.  This factor weighs against relief.

4.  Nonrequesting spouse's legal obligation:  Petitioner did not demonstrate that her former spouse is obligated by their divorce decree to pay this deficiency.  This factor is neutral.

5.  Significant benefit:  Petitioner received no significant benefit from the unpaid tax, other than normal support.  This factor is neutral.

6. Compliance with income tax laws: Petitioner was up-to-date with tax returns at the time respondent denied relief. This factor is neutral.

Two other factors, abuse and the mental or physical health of petitioner, can weigh only in favor of relief. Respondent found that these factors do not apply to this case. The Court has found nothing in the record relating to these factors to indicate that respondent's evaluation is incorrect. We therefore agree with respondent's determination that these factors are neutral.

Respondent determined that the factor (petitioner's divorce) that favors relief is outweighed by the factors (her knowledge of the income and her failure to demonstrate economic hardship) that favor liability. Considering all the facts and circumstances of this case, we hold that petitioner has not demonstrated that respondent acted arbitrarily, capriciously, or without sound basis in fact and that respondent did not abuse his discretion in denying petitioner relief under section 6015(f).

## Conclusion

Petitioner is not entitled to relief under section 6015(b) or (c), and respondent did not abuse his discretion in denying relief under section 6015(f).

To reflect the foregoing,

Decision will be entered

for respondent.